Good morning, Your Honors, and may it please the Court, Robert Stern for PatentOwner, Capella, with me at Counsel Table are Deidre Wells and Jonathan Chuminoro. The Board's decision, Your Honor, must be reversed for three reasons. First, the Board's in the light of the specification and all of the intrinsic evidence. And, under this proper construction, appellees did not provide any evidence to show that the combination would render obvious these claims. And, in addition, the combination that has been used by the Board destroys Boyevich's, the primary reference's, principle of operation. And, finally, the Smith reference, we were never given an opportunity to respond to Cisco's claim chart when it was submitted at the very end of the case. So let's go, if we could please, to the claims. Claim 1 of the 678 patent requires, and I want to read it very carefully, multiple fiber collimators providing an input port for a Now, let's assume for the moment that we disagree with you as to the meaning of the word port. And then we're still faced with this 678 patent with this providing language in it. Why was the Board wrong in saying that providing doesn't mean the same as being? In other words, that the fiber collimators don't have to be the ports. Your Honor, this goes to the whole heart of this case. The point you're asking about. Yeah, exactly. And why this invention was so successful. This invention overcame the need for use of circulators. It provided a single device that would allow an input white individual output ports. It's the basis of the present internet that we have today. We have figure 9 in the provision, which is described as an embodiment of the present invention. You would agree that that figure 9 doesn't show the fiber collimators serving as the ports, right? No, that that figure shows that the collimators are serving as the ports, but not the circulators. So let's go to figure 9. What page is that? That is at 4945 of the appendix, Your Honor. It does not show the circulators being ports? No, it does not. That's the whole issue here. Suppose it did show circulators as being ports. Do you agree then the board is right? No, because it doesn't show that. No, I understand that. But you've got to accept my hypothetical. The hypothetical is, let's assume that figure 9 does show the fiber collimators carrying the signal, but that the ports are circulators and not fiber collimators. Fiber collimators, Your Honor. Sorry. Did you lose that? No, we don't lose that, because the principle of operation of Boyevich is destroyed by the combination. Can you speak up a little bit? Yeah, I'm sorry, Your Honor. Sorry. The principle of operation of Boyevich is destroyed by the secondary references. Okay, well, why don't you go back and tell us why in figure 9 the ports are not circulators. Okay, so let's look at figure 9, which is in appendix 4945. Now, the circulators, Your Honor, are denoted as circles below the arrows. And above the arrows, it's labeled ports. And the box that is shown is what is called a WSR. If we go back to the claim, it says that the, Your Honor, let's take a look, if we could, at the first sentence of the summary of the invention, where it states, and I quote, and this is at line 3, 54 through 58, which is at the appendix at 282. This is the patent. And this is the same in both specifications. It says, the present invention provides a wavelength-separating routing WSR apparatus and method. Now, the box in figure 9 that's hashed is the WSR apparatus and method. And it goes on to say in the summary, which employs an array of fiber collimators serving as an input port and a plurality of output ports. So what is being shown in figure 9, Your Honor, is that the WSR, which is at the top of the figure, has these fibers coming off of it, one for each port, as they're labeled, ports 1, 2, 3, and 4. Let's put the circles at the bottom of circulators, right? Yeah, but it shows the claimed invention, which is the box, in the context of a larger set of optical systems that includes circulators. Does this drawing show collimators? No, it does not specifically show them. Where would they be? They would be in the hash box, Your Honor. That's where they would be. And if you look at all the figures... And what's your evidence for that? Well, I mean, that's the only logical thing to see. If you look at all the figures... Well, that's a problem, because we're not expert in this art. No, but I'm not... This is in the provisional, and in the non-provisional... Is there any testimony about this? I mean, this is a periodic problem that we have here, that lawyers get up and they essentially start testifying as part of the argument as to what the technology means, and that's difficult for us. And so we say, do you have an expert? Well, Your Honor, yeah. Do you have an expert who said this? Do you? Yes. So if we look at the appendix at 4943, this is again the provisional. It states... Now wait, but I asked, do you have an expert? Is the answer no? No, Your Honor. I want to go to the specification. I asked you, do you have expert testimony about this? Is the answer yes or no? No, we do not, Your Honor. Okay. And doesn't the 217 also refer to the circulator ports as add-drop ports? No, they are add or drop, or input or output. That is a functional term, but they're not ports. Ports, Your Honor, is a... Look at 4933. Your Honor, if we look at the appendix at 4933, it says, quote, circulators are situated on... Which paragraph? This is in 4933. I know which paragraph. That's a big page. It's the text right below the text. It's the fourth paragraph. Your Honor, it's the... I got it. It's the fourth paragraph. It says, the third architecture, figure nine, is also bidirectional, but uses only one WSR unit. Circulators are situated on all of the physical input-output ports, allowing for two-way optical propagation. All right, and then read the next sentence. It says, this design has the restriction that each of the add-drop ports, the add-drop and wavelengths, must be the same. What we're talking about here is that the circulators are the circles, Your Honor, that are shown below the arrows. What this invention, if you look at all of the figures in the non-provisional, and all of the specification, and the claims, you see that the ports, in a reasonable construction in this case, are the collimators. The background section of the patent describes the need to not use circulators because of their problems. They add additional components, and they provide attenuation issues. This claimed invention fundamentally changed the architecture of the Internet. The elimination of circulators was the whole purpose. Figure nine is just showing the switch with the various ports in the context of a larger system, which would use circulators. But the word port, as used in the specification, is specific to this specification, and not just a general use of the word port. This is not a broadest possible interpretation. This is a broadest reasonable interpretation case. And here, what the board did was broadest possible interpretation. But aren't you referring simply to certain embodiments? All the embodiments are consistent. The specification is consistent. The collimators provide the ports, and all ports are collimators. That's the way the patent is written. And it has to be this way in order for the system to work in its intended way. It can't work with circulators because circulators, the signal comes in in one input, call it a port, and it comes out that next output, which is also a port. But ports, as used here, is you have one input port, and then the signals are directed with the two-axis mirrors to a specific output port. The collimator takes the light that's in free space inside the switch and puts it back onto the fiber. I mean, you know, you're standing up here, and you're basically testifying as to what this technology means. And that's a problem for us. I don't know why, if you thought that this was the case, that you didn't put any expert testimony in explaining this. Your Honor, throughout the entire trial, this has been our position. We have not waived this. We have not changed this. It's not a question of waiver. It's a question of we have to deal with the record. And in order to understand the record, we have to have guidance from someone skilled in the art when you're dealing with something as complicated as this is. Your Honor, the summary of the invention section, as I said earlier, states that the invention, this is what the inventors contemplated. They state this at the very beginning. Let me read it again, if I may. What page are you on? Excuse me, judges? What page? We are at column three, lines 54 through 58 of the patent. I know. You've got to give me the J.A. site. Okay. I'm sorry. It's appendix 282. Column three, lines 54 through 58. Okay. It says, again, and this is what the inventors contemplated, Your Honors, as their invention. This is the very first sentence of the summary. It says, the present invention. We're not talking about embodiments. And by the way, this is consistent throughout the entire specification in the figures, the drawings. Everything is totally consistent. The present invention provides a wavelength-separating routing apparatus. That's the switch. Wavelength-separating. It separates the signals, and then it routes them. That's the switching function, which employ an array of fiber collimators, and you see that in every one of the figures. Those are those round tubes in the figures. An array of fiber collimators serving as an input port that's shown in every figure, and a plurality of output ports. So that's what the inventors contemplated as their invention. Well, that language does support your position, but it doesn't necessarily tell us what Figure 9 means in the provision. Well, it does, Your Honor, I submit, because if you read Figure 9 in the context of the non-provisional patent, it makes total sense. I mean, the idea that you have circulators outside of the switch is described in the background section of the patent. We're eliminating the circulators. I mean, is your response in Figure 9 that it doesn't show collimators at all, so we don't know where they are? Well, we know the collimators have to be within the switch, because that's what the summary of the invention says. And the switch is the box. The switch is the box. The box is labeled. The text of the box is labeled. You look at Figure 9. I mean, this 4945 doesn't say anything about what's in the box. So, Your Honor, sorry, if we could go to Appendix 4945, please. So it shows a wavelength separation and routing. That's the switch. Now, you have these functional lines. They're labeled Port 1, Lambda 1. These are each of the individual light beams that are coming out in the individual ports, Port 1, Port 2, Port 3, Port 4. And then so the collimators, if you will, could be either construed as being inside the box or that arrow. But once they come off the arrow, they go into the circuit. Well, that's the problem. I mean, again, you're asking us to trust you on where the collimators are in this drawing. It seems to me they could be any number of places. It doesn't show it at all. Can you point to me to either expert testimony or something in specifications that specifically say where? Because I'm not sure this necessarily hurts you all that much if it doesn't show where the collimators are at all. Yeah, well, it does, Your Honor. But, I mean, you're testifying as to where you think they are. It's not something I'm going to accept. Let me back up. Let me just say that I don't know of any specific evidence that I can say to support what I'm saying other than the reading of this in the context of the non-provisional. Okay, that's all I'm going to say. But the PTO reached a different conclusion as to the meaning of Figure 9, correct? No, the PTO construed the term port under BRI to be... That's certainly true, but we're skipping over that for the moment because we're proceeding on the assumption... Yeah, the PTO swept in... You can't interrupt. I'm sorry. We're proceeding on the assumption here that we don't accept your interpretation of port so that we're focusing on the providing language, which does appear in some of the claims. So are you saying that the Board didn't make such a finding? No, the Board swept in circulators to their definition of ports. Right. And, I mean, can I echo my colleague? Let's assume we disagree with you about that. We're still concentrating on do the collimators have to be the ports or can they be broader? And we think circulators can be ports, but does that providing language mean that the collimators have to provide that port? Sorry. I mean, your drawing certainly, the drawing of the patent with the multiple collimators certainly shows each individual collimator being one input port, multiple output ports, but we're talking about the figure nine in the provisional and whether the PTO could rely on that to show that it showed collimators or ports that were similar to the prior art. And you haven't given us any guidance about where the collimators are in there. I mean, is the answer we just don't know because nothing in the specifications talk about it and you don't have any expert testimony about it. That's correct. Okay. You're way past your time, maybe two minutes for a bottle. Okay. Your Honor, I'll reserve my rebuttal time. There's nothing to reserve. We'll give you two minutes anyway. Okay. Thank you. Ms. Guskey, is that how you pronounce it? Correct. Most people don't get that on the first try. Is there really any dispute about where the collimators are in figure nine? Isn't the dispute over whether circulators are also located in the same place? Correct. Whether circulators are also part of figure nine and also whether those circulators provide ports or are part of the ports in figure nine. So where is it your view or the board's view, where do they think the circulators in figure nine are in the WSR? The circulators are the round pieces that you see towards the bottom of the figure on 4945. It's where you see the add and the drops coming out. And to your Honor's point before on 4933, those are directly related and are in fact the add drop ports that are referred to in the paragraph describing figure nine. So that's the question is that says add and drop and there seems to be one going into the circulator and one going out of the circulator, right? Correct. So if the add drops go in and go out, why is the circulator also a port? The circulators are providing the physical structure of the port in figure nine. So the adds are going in through the circulator port as are the drop signals. And so you're saying that the circulator can't just be circulating what's coming in and out of the ports? Correct. In fact, it could be doing that. That's not what it's doing in figure nine. And that's actually a chief distinction between what's disclosed in figure nine and the background section in the two challenge patents that relate to circulators. Which is, if you don't mind, a point that I'd like to address that came up in opening. If you look in the background section of patents in 368, there are a number of, and that's the same for the 678, there are a number of prior art configurations that are described. What Capella has not done, either below or in this case, is looked at what do those disclosures really have to do with circulators. And if you look only, I think, three out of the four described prior art systems, the circulators were actually implemented as the switching routing mechanism within the configuration. So they weren't being used as ports like in figure nine and how it's claimed in these two patents. Instead, it was the primary switching, sorting, separating apparatus. So the issues around circulators that come up in the background section are independent of how circulators are used in the prior art references that the PTAB considered and also how the claims themselves recite the invention. Well, okay, so going back to the providing language, the providing language only says that the culminators provide the input port and the output ports, and you're conceding that the add-drop ports are different from the circulator, right? No, those are the ports of the circulator. So add would be add and then also input on figure nine in the upper left of 4945. Input in the adds would be consistent with input ports. The drops would be consistent with output ports in the claims, including the 678 claims that recite the providing language. What is your response to Mr. Stern's contention that the whole point of this document and this patent was to do away with the circulators? That goes back to what I was saying about the capella support for that is the statements that are in the background section, and the way circulators are discussed in that section have to do with using circulators elsewhere in the ODEM technology and the wavelength separating technology, not in the sense of providing the input and output outside of the components that are responsible for separating and switching. In fact, one of those references that they don't address doesn't have a circulator at all in it. So the notion that circulators are somehow, or the elimination of them, are somehow central to the invention just isn't supported by the only support that they cite. So if I understand the question we're talking about, it's whether the circulators can serve as the ports or whether the fiber collimators have to be the ports, right? Correct. And did the board make a determination as to the meaning of Figure 9? The board most definitely evaluated it and agreed with petitioners. Where do we find a finding of fact as to what Figure 9 discloses? I'll refer your honors to Appendix 14, and this is one example of the six final written decisions that came to the same conclusion. It's the final written decision for the 368 patent in the Cisco set of IPRs. And the sentence starts about the fourth line down. Not about, it actually is the fourth line down. Moreover, petitioner further demonstrates that a provisional application to the 368 patent,  and then it refers back to, in the site, Exhibit 1008, Figure 9, which in the record below. I understand that. The problem I have with that reference is it doesn't answer the question at least that I think I'm asking. I agree with you that you could have a circulator as a port, but that still doesn't get to the language in the claims that the collimators provide the port and in the specific language in discussing in the summary, they mentioned that the summary says the collimators provide the ports. It's not that circulators can't be additional ports, but at least collimators themselves provide individual and multiple output ports. That doesn't address that question at all. And this is the problem with Figure 9 for me, is that nobody explains to me where the collimators are in Figure 9. Understood. Break that into a couple of pieces. First, you mentioned the language in the summary of the invention that refers to collimators in the present invention. On 4933, which again is in the provisional, at the very top, it reads, three different Odom architectures disclosed in the present invention are shown in Figure 7 through 9. So with the provisional as part of the intrinsic record here, Figure 9 is also part of the present invention. Well, I get that, but that still doesn't answer my question, because Figure 9 can certainly be consistent with their interpretation. It's that collimators are in that black box instead of somewhere else. If there are multiple collimators in that black box, one of which is an input and four of which are an output, or three of which is an output, that's entirely consistent with their argument, isn't it? I don't think so. And I don't think that Figure 9 is so limited and doesn't actually require collimators. I mean, then it would look like, just like if that black box opened up and looked like exactly what's in the rest of the figures we're talking about, where it's very clear that the collimators are ports and each are separate ports, then it would be exactly the same, wouldn't it? I mean, the answer is yes, because my hypothetical assumes that that's what the box shows. And if that's the case, then Example 9 doesn't help you, it helps them. But since Example 9 doesn't show anything either way, I'm not sure how it helps support the board's interpretation. Two other things to note about Figure 9, and it's right on the figure itself. If you look at the title of Figure 9 on 4945, it actually recites in parentheses at the end that it is the circulator scheme. It says nothing about collimators. Collimators don't have to be there. This is about circulators providing ports. Again, I don't know how that helps you. That seems to me to suggest that this drawing isn't relevant to where the collimators are. It's adding an additional circulator scheme but not addressing where the collimators are. Is there anything anywhere in the record that suggests where the collimators are in Figure 9? I thought there were some other figures here. I thought your interpretation and the board's interpretation of providing is that what that means is not that the collimators are the ports, but the collimators provide the signal to the ports, and that's within the meaning of providing the ports. Am I understanding that correctly? That's correct. I thought there were other figures here which showed collimators providing signals to ports, to circulators. Am I mistaken on that? I'm not able to find it immediately, but I thought there were some other figures that were part of this, not in the provisional. The closest in the patent that you get, a good example of it is Figure 5 of both patents. Both in Figure 5 and in the discussion of Figure 5, there's not reference that's being specifically made to a specific type of port. It doesn't have to be a collimator, it doesn't have to be a circulator. What page are you looking at? Sure. The figure itself is Appendix 257. I thought that the point the board was making is that it's not so much that there's no evidence of collimators providing ports in this patent, it's that there's nothing that would exclude circulators from also providing ports. That's exactly right. It's also consistent with, it's actually a portion of the specification that Capella cites, and it's briefing both here and below in Column 6 of the 368, so it's 261 of the patent we have now, that's describing Figure 1A. This is a figure that Capella has contended supports this construction, where it notes starting at line 57, the WSR Apparatus 100 comprises multiple input-output ports, which may be in the form of an array of collimators. So even in the discussion relating to collimators and the patent itself, it's may, it's permissive language, not mandatory language. And the patent owner's expert said that a person of ordinary skill when reading the patent would understand that the patent was discouraging the use of circulators as ports, right? Or at least discouraging, maybe more. That is what their expert testified. There was rebuttal evidence. The board considered both of those things and made a factual determination that the evidence supported a finding that actually it would, a person of ordinary skill in the art would not make that assumption. Well, is that right? Or did they say even if we accept his testimony that a person of ordinary skill would make that assumption, it didn't rise to the level of a full disavowal? That's correct. Okay. But in terms of Judge Dyke's original question, is there any support other than what's in the patent and then the figures itself? There is at least a testimony from their expert, even if the board didn't think it got them all the way there. That is correct. Okay. Thank you. And now we have Mr. Sears. Is that right? Your Honor, this is Mr. Bruin. You were going to go next? Okay. We'll save our time, and we've submitted our time for discussion. Okay. So there's no further argument then? That's correct. Okay. Thank you. Mr. Stern has a few minutes here. Can I just ask you this? I mean, I understand your argument that there has to be a one-to-one port for a collimator, but a collimator itself is not a port, right? A collimator is a port. No, I mean, what a collimator does is focus the light, right? Do I misunderstand this? Correct. On one side, Your Honor, is free space. So there has to be some – I mean, if you just have a collimator, which I assume is an actual physical device. Correct. It's not a port until you attach it to something. No, it's a port because the light comes in from free space and goes into a fiber. So a collimator makes the light parallel. Right. So it provides the port. Yeah, but it acts as the port. It is the port. The collimator and the port are the same thing. Isn't it correct to say that it can be the port but that it isn't necessarily the port? No. You could have a situation where the collimator provides the signal to a circulator port, right? Right, but that is not the way the claim is written. No, I understand, but I'm just trying to get at the structure here. Right. So we have a situation in which the collimator could be a port but isn't necessarily a port. No, I'm not talking about in the patent. I'm talking about just generally. Oh, yes, Your Honor. There's ports all through optical systems. You have ports on your phone. You have ports on your laptop. Everything that allows a signal to go in or out is a port. That's just a general term in the technology. We're talking about the port is used in the summary of the invention and in the claims. I should note that the 368 patent does not incorporate the provisional. It's not incorporated by reference. In the 678 patent, though it is incorporated by reference, as I've been... I find this case very difficult, and I find some aspects of your argument compelling. I find some aspects of the other side compelling. Don't make a face at me. Even though I think your reading of the patent seems more natural, if you look at it as the board did and say there is an array of collimators, there's a bunch of them, and with that array there is one input port and a bunch of output ports attached to them, then why isn't Borovich prior art for that? Because you have a couple of collimators, and you have at least one input port attached to them, and you have an array of output ports attached to them. Well, because, Your Honor, the way the board construed port was you had the two lenses in Borovich, 12A and 12B, then you had a fiber between those lenses, and then way outside the system you had a circulator, and they expanded out the definition. They separated. You're going back to the argument about the definition of port, which I think we've all long told you not to do because we don't agree with you, or at least I don't. So it seems to me that if we look at this, we have to figure out that this language somehow says multiple fiber collimators with one of those collimators being an input port and with multiple other ones being output ports, but it's not what it says, and I just am struggling with whether the board's interpretation of providing is unreasonably broad, and I don't see how it is. If we look at this as we have a group of collimators meeting the right number, and that group provides one input port and then provides multiple output ports, and it doesn't say necessarily that it has to do it directly. But, Your Honor, that's a possible interpretation, but it's not reasonable. It's not a reasonable interpretation. I mean, that's a possible interpretation. I would agree with you there. But what they've done is what I would call the broadest possible interpretation. And it's not reasonable because why? Because there's nothing in your specification that suggests that? There's nothing in the specification. Except for Figure 9, which we can't figure out what it shows, because there's no testimony about it. Right. Your Honor, just real quick, I know I'm way past my time, but if we go to Appendix 4946, which comes right after Figure 9, and the provisional, you see just fiber collimators. You don't see any circulators there. So these lines are the ports, and the ports are collimators. And if you look at Figure 4946 in the appendix, if you go further and you look at 4950, and then you go even further in the provisional, and you look at 4954, and you look at 4955, the problem is, and I understand the board to have said, was that there are some embodiments where there are circulators in the ports, and there's some embodiments where the fiber collimators are the ports. Your Honor, I go back to 4933, where it describes Figure 9. It says, The third architecture is also bidirectional, but uses only one WSR unit. Circulators are situated on all of the physical input-output ports. They're situated. They're not the ports. They're situated on. Okay, I think we're out of time. Okay, I'm sorry. Thank you. Thank both counsel. The case is submitted.